Good morning, Your Honors. My name is Gary Finn, and I represent the Petitioner. Good morning. And, Your Honors, I think that this is a very interesting case and really a very satisfying case from the Petitioner's perspective because I think that the two main arguments that we tried to make in our briefs in this case were really the correctness of those arguments was really confirmed after the briefing was completed by two cases which came down subsequent to the time for the briefs. And the first case is Altamirano v. Gonzales. Could you give these – notify us of these cases in a 28-J letter? Yes, I did, Your Honor. You did? Yes. I don't seem to have my – all right, why don't you give me the names of them? Okay. The one I'm talking about right now is Altamirano v. Gonzales, and it's 427 Fed Third 586, 9th Circuit, 2005. Say it again slower. I'm sorry. 427 Fed Third 586, 9th Circuit, 2005. Okay. And the 28-J letter was submitted, but what the case held is that in order for an alien to be found to be engaging in alien smuggling, there must be knowledge of a smuggling scheme plus an overt act in furtherance of the smuggling. Well, you know, smuggling doesn't mean what we sometimes would colloquially think of it. It doesn't mean you've hidden somebody in a compartment. The statute talks about encouraging, inducing, or assisting someone, aiding someone to enter improperly. That's absolutely true. I'm kind of at a loss as to how we could say that the immigration judge couldn't possibly have concluded that that statute was violated when the facts are these people traveled together to Mexico on vacation. One of the people is a three-and-a-half-year-old, and they're coming back. Why couldn't a reasonable person find that he assisted the youngster in coming back? Well, there's nothing in the record. I'm sure you would assume that the father would assist the child in anything the child does at that age, certainly. He said they went to Mexico on vacation to take care of this birth certificate thing, and they came back crossing the weeds. That's what he said. That's right. But, you know, if you interpreted the statute that way, I think it would lead to an absurd result because in that case, every single alien that ever enters the United States illegally in a group of more than one would be alien smuggling because they would each be seen to be encouraging and assisting the others. Well, you know, if they're strangers, that's one thing, or if they're just in a pack. But I'm talking about he's saying they're going on vacation. They're going to go and come back. That seems to be a different story than the one you just posited. Right. Well, they were traveling together. They did go on vacation, but I don't – there's nothing really to show an affirmative act of assistance, you know, in the record. Give me examples of what an affirmative act would be. Well, paying a smuggler, you know, encouraging somebody to come over from Mexico illegally and telling the person, you know, if you can make it over the border illegally from Mexico, I'll give you a job. I'll give you a place to stay. You don't have to even be present at the scene of the act of smuggling in order for smuggling to happen, I think. But in this case, just being present, you know, that's what the Altamirano case said. In Altamirano, there was – the alien in that case was in a car with a person that was being smuggled and knew that another person that was in the car was going to smuggle this person. I think the person was hidden in the trunk of the car. And this lady that was in the back seat knew about the whole scheme but was found not to be smuggling because she didn't take any affirmative act in furtherance of the smuggling scheme. But this guy's taking the kid there and bringing the kid back. That's true. But I think you have to – I mean, the interpretation that Your Honor is suggesting, I believe, is just too broad. I mean, it would – we're talking about the cancellation of removal statute, which is an ameliorative statute. It's designed to provide relief for people with family members in the United States, of course. You know all this, that have been living here for a long time. And if you interpreted the statute that broadly, it's just not what Congress could have intended. One of the cases I cited in my brief was a situation where two friends had gone to Mexico for a party. They got drunk, and in the wee hours of the morning, they came across the border together illegally through – I forget exactly how, but not through a port of entry. And in that case, it was found that they weren't helping each other. They weren't assisting each other. They were just coming together illegally. I thought your other argument was the stronger one about the 10-year problem. Could you address that a bit? Yes. And that's what I was going to get to. That's the second case that was decided after briefing was completed. That's Ortega Cabrera. That was a Board of Immigration Appeals case. And that held that if at the time of the final administrative order from the BIA, the person can prove that at that moment they have 10 years of good moral character, then they qualify for cancellation of removal. And in this case, if you assume that it was smuggling, what occurred in February of 1993, if that was alien smuggling, the BIA didn't make its ruling until March of 2004. So by that time, the Petitioner, even if it was smuggling, what he did in February of 1993, he still could prove the 10 years of good moral character by March 2004. So the BIA should have remanded the case to the immigration judge as opposed to dismissing the appeal. Did that decision come down early enough for you to seek to reopen? No, it did not, Your Honor. You had already filed your notice of appeal here? Yes, because the Ortega Cabrera decision came down in 2005, and we filed our notice of appeal shortly after March 2004. So if you're right about this, what should we do? Remand it to the BIA to reconsider in light of their new decision or something like that? Yes, to remand it to the BIA and for a hearing on the Petitioner's application for cancellation of removal. And as you can see from the record, this man, aside from this incident in February of 1993, this man is a good man. He's respected in the community. He has three children that are United States citizens. He's had the same job for more than 15 years now. So he's doing something right. Well, I think your 10-year rule argument is pretty valid. And if we say that it's valid under their decisions and remand, what more will the BIA or the IJ have to do? Well, the IJ didn't make a ruling on the question of extreme and exceptionally unusual hardship in the case. When this incident about the February of 1993 incident came up in the hearing, the IJ just sort of pre-terminated the proceeding. He didn't decide the – I mean, it seemed to me from the record that the IJ was leaning towards finding the hardship. And the IJ even said if it was as a matter of discretion, he would grant relief. But he felt he was precluded from granting relief because of this smuggling incident, which – if it is a smuggling incident, which would have rendered the Petitioner lacking in good moral character. Could this go back to the same IJ? Yes, it would. Would? Yeah. He's still there. You're going to see him tomorrow, as a matter of fact. You have another appointment with him, huh? Yes.  I'll reserve the balance of my time. Thank you very much. Thank you very much. May it please the Court. Joan Smiley from the Justice Department on behalf of the Attorney General. Here, the record indicates there's substantial evidence to support the judge's determination that Mr. Acunagam has lacked the good moral character required and, therefore, under Sections 101F3 of the Act and 212A6EI, he's barred as one who knowingly induced his lack of good moral character, is going back to Mexico to adopt his stepson and indicate that the – and to do so lawfully so that he can take care of the child. They come back into the United States, and all of a sudden, he's up on an alien smuggling charge. That's the lack of good moral character? Yes, it is. Here, the – I mean, you have to admit that we don't have any lack of good moral character aside from this incident. It's pretty hard to say that it was lack of good moral character in a stepfather's decision to go and regularize the birth certificate of his stepson to show himself as the father. That's kind of tough for even the government to make an argument that that's indicative of bad moral character, right? He did knowingly implement a plan to travel to Mexico with his companion. He sure did. And with no basis for a legal entry into the United States after a two-week vacation, he took affirmative acts that assisted and aided in the plan to enter the United States. What are the affirmative acts in the record? Excuse me? What are the affirmative acts in the record? The affirmative acts are the fact that he planned to go to Mexico to adopt the son of his companion. The plan is not an affirmative act. What's the affirmative act? Implemented a trip to Mexico. Implemented the plan to return to the United States with no lawful documents. As Judge Reimer indicated in her concurring and dissenting opinion in Altamirano v. Gonzalez, affirmative acts assisted in the smuggling plan in that case. And there, the affirmative acts were part of the plan because the woman in the car knew that an illegal alien was in the trunk, and the plan was made, in the judge's view, to assist the entry into the United States. And here, the plan was the affirmative acts were, as I stated, to travel to Mexico with no lawful basis to return. Crossing the border with somebody hidden in the trunk is a little different from, as this guy described it, jumping over some weeds. Well, that's the only basis. It's his own description of returning to the United States, apparently an honest description, and he gets hung on his by the I.J. on his own statement. We're not even sure who was holding the child at the time they jumped the weeds. As Judge Betty Fletcher indicated in her concurring opinion in Moran v. Ashcroft, there she acknowledged that there sometimes are harsh results. There were in Moran, she believed, but she also agreed that denial of cancellation of removal in that case was required by law. And by the same token in this case, he, Mr. Acuna-Gomez, did knowingly aid and assist the others in entering the United States unlawfully. But that's not what the record says. It doesn't say that he aided and assisted the others. I mean, and there's no evidence of aiding and assisting the others. All there is is evidence of being present together and jumping over the weeds. No evidence of anything more than that. Well, the evidence is that he testified that on page 55 of the record that he planned to go to a judge in Mexico to effectuate this birth registry, that he took his companion and her son with him in February of 1993. He intended to list himself as the son Edgar's birth. Okay. But none of that has to do with the crime of smuggling. I'm sorry. I can't hear you. None of that, none of those three things have to do with the crime of smuggling. Tell me, you know, what from your ---- Well, it's part of the plan. Once you go there, you have to return, if that's your intent. And it was their intent to go for the two-week vacation and then to return. And they did so without any ---- it's not like they had a visa or a valid border crossing card. They had nothing. They went to Mexico, and the only way to come back would be to come back in violation of law, since they had no valid documents. And he testified that that's what they did. They crossed through the weeds and crossed the border. And, in fact, at the two hearings, on April 25th, 2001, and on October 9th, 2002, the judge stated that he believes that the alien is ineligible for cancellation because of the alien smuggling. And he offered the opportunity on those two occasions for them to explain or rebut, and they had nothing to offer on that subject. Even if you're right on that, doesn't Mr. Finn have a point about the 10-year rule? As the government argued in its brief, the 10-year issue is not properly before the Court. There's no jurisdiction. Under Section 242 of the Act, this is not part of the record. And this, of course, is a record review. But how could it be? The 10-year ---- the BIA says the time doesn't expire until we issue a decision. He didn't have a decision at the time. He can't anticipate. He can't make an anticipatory argument in order to preserve it. He has no clue how the ---- it's complete within the matter of the BIA. It's within their control. Well, he had a clue that the immigration judge had issued his decision, and he knew what that was. Right. But that's not in my record. That's not in my record. He filed his appeal brief on June 10th, 2003. Well, we can't ---- we can't file that against him. There's nothing in the brief about that. Well, the 10 years hadn't expired, had it? Didn't expire until ---- Yes, it had. February of 1993 to June 10th of 2003, it had expired. And here again, it's very ---- the case law is very clear that issues cannot be raised for the first time on appeal, since it is a record review. Therefore, the government would submit that the immigration judge properly determined that Petitioner's actions were clearly encompassed by the smuggling bar. Wait a second. On that point, he did, in his notice of appeal, say, I have been physically present in the United States for a continuous period of not less than 10 years, merely proceeding the date of the application, and have also been a person of good moral character during such period. So he did make that argument in his notice of appeal. And we held in Lada v. INS, as long as you raise it in your notice of appeal, that's sufficient. You don't necessarily need to elaborate on it in the BIA brief. So he didn't make that argument. Well, the government would submit that the statement Your Honor just read does not deal with the alien smuggling bar. And, in fact, there's nothing in the notice of appeal or in the brief. What could it be dealing with? The only finding on good moral character had to do with the smuggling. What else could it be referring to? He makes no argument that he has now accrued 10 years of good moral character. Our rule is that you can't do that. And in any event, under the cancellation statute, the requirement is 10 years preceding the application for cancellation. So that wouldn't help him in any event. The judge properly determined here that his actions were clearly encompassed within Section 212A6E1 of the Act, and that the court should therefore defer to the agency's interpretation of the statute. Unless there are any further questions, the government would ask that the Attorney General's determination be upheld. Thank you, Ms. Smiley. Mr. Pinn. Well, just very briefly, Your Honors, I think that it is contained in the record that when the BIA made its decision in March of 2004, 10 years had gone by since the incident of smuggling. If that's what the Court finds that it was, then that's clearly in the record. That's the only argument, the additional argument I have. Thank you very much. Thank you, Mr. Pinn. Ms. Smiley, thank you. The case just argued is submitted. The next four cases are submitted at this time on the briefs. The next case, then, to be argued is 0556235 and 0556312, United States v. Park Place, Associates Limited. Each side will have 20 minutes. Thank you.
judges: Silverman, Wardlaw, Bybee